[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY HUNTINGTONMORTGAGE CO.
The plaintiffs, Culver J. Gleason and Cynthia K. Gleason, filed this three count second amended complaint against the defendants, Huntington Mortgage Company (Huntington) and Pamelia Craparotta seeking damages allegedly caused to plaintiffs' property at 73 Colony Road, South Windsor, resulting from a defective septic system.
In the first count, directed to Pamelia Craparotta who sold the property to the plaintiffs, the Gleasons allege the following facts. In 1993, the Gleasons negotiated with Craparotta for the purchase the property, which belonged to Craparotta. To induce the plaintiffs to purchase the CT Page 5284-KKK property, Craparotta represented to the Gleasons that the septic system was in good working order and was not in need of any major repairs. Relying on these representations, the Gleasons purchased the property on November 15, 1993 for $135,000.00. The plaintiffs further allege that the property was not as represented, and that beginning the last week of December, 1993, the septic system completely broke down, causing raw sewage to back up in the pipes and spill into and onto the rooms of the property.
In the second count directed to Huntington Mortgage Co., the plaintiffs allege that on October 28, 1993, Huntington agreed to make a residential loan to the Gleasons which was contingent upon certification that the septic system was adequate and functioning properly and which was also contingent upon Huntington's submission of said finding to the United States Department of Housing and Urban Development (HUD). This condition was required by HUD in order for Huntington to secure HUD mortgage insurance. The Gleasons allege that at no time did Huntington inspect or employ others to inspect the septic system. On November 15, 1993, Huntington represented to the plaintiffs that all conditions of the financing contract had been satisfied. The plaintiffs charge Huntington with fraudulent misrepresentation claiming it knew or should have known that these representations were false, and that they were made to induce the Gleasons to enter into the financing contract and to induce HUD to provide mortgage insurance.
The third count alleges that Huntington has made the same or similar representations to other customers who have sought financing involving HUD, and that Huntington's conduct was not an isolated act of misconduct. It is clearly predicated on the second count.
On March 27, 1996, Huntington filed this motion for summary judgment on the second and third counts claiming that it owed no duty to the plaintiffs with respect to the septic system or the value of the property.
— I —
Huntington claims that it is in the business of financing the purchase of homes, not guaranteeing the quality of the home purchased. According to Huntington, any CT Page 5284-LLL information regarding the septic system was generated as a result of the requirements of HUD and was not provided to the Gleasons for the purpose of guiding them in the transaction.
Huntington further maintains that by requiring inspection of the septic system, it was merely assuring itself and the FHA of the adequacy of the collateral against which it was lending money, and that because of the specific purpose of the inspection, Huntington argues that it owed no duty of care to the Gleasons.
Plaintiffs claim in opposing this motion that Huntington was in the business of supplying information to the plaintiffs and other customers to guide them in their business transactions and there is a genuine difference on this material fact. Plaintiffs' challenge Huntington in its assertion that its status as a mortgage provider removes it from consideration as an information provider. Finally they argue that although Huntington was under no duty to help them procure a federally subsidized loan, once it voluntarily agreed to assist them, it was required to act with due care citing First Federal Savings Loan Assoc. ofHamilton v. Caudle, 425 So.2d 1050 (Ala. 1982). Since Huntington provided information and guidance in the procurement of federally subsidized loans to its customers both in the course of and in furtherance of its business, plaintiffs claim that it therefore had a duty to act with due care.
— II —
"The existence of a duty of care, an essential element of negligence, is a matter of law for the court to decide."Burns v. Board of Ed., 228 Conn. 640, 646 (1994). The second count sounds in negligent misrepresentation the governing principles of which have been set forth in § 552 of the Restatement Second of Torts (1979) in the following manner: "one who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." This definition has been CT Page 5284-MMM cited approvingly in D'Ulisse-Cupo v. Board of Board ofDirectors of N.D.H.S., 202 Conn. 206, 218 (1987).
Because of the paucity of Connecticut case law, both parties have relied on decisions in other states.
The First Federal case, upon which the plaintiffs rely, is hardly convincing authority in the present case. In that case, the issue, as framed by the court, was "whether a statement made by a lender's agent to prospective home buyers that they had been approved for an FHA 235 loan, when they, in fact, had not been approved, is actionable. . . ." Supra, 425 So.2d 1050. In the present case, the issue is whether Huntington misrepresented the condition of the septic system, and therefore the property.
The facts of Greatbatch v. Metropolitan Federal Bank,534 N.W.2d 115 (Iowa Ct.App. 1995) relied on by defendants is more on point. In that case, the plaintiffs applied for a residential loan with the defendant-lender, which required an acceptable septic certification prior to closing. The plaintiffs claimed that although no septic inspection had been obtained, an employee of the bank informed them that the loan was ready for closing. Soon after closing, the plaintiffs experienced problems with the septic system, similar to those experienced by the plaintiffs, and they sued the bank for negligent misrepresentation. The bank filed a motion for summary judgment, claiming that it owed no duty of care to the plaintiffs. The court in granting the motion stated that "the duty to use reasonable care in supplying information applies only to persons engaged in the business or profession of supplying information to others . . . . Without facts to show a person is in the business of supplying information to others, no duty arises." Id., 117. The court determined that "the product supplied by the bank was a loan, not information concerning the processing of the loan. The information concerning the inspection certificate was not an additional product supplied by the bank . . . but was incidental to the underlying financial transaction." Id., 118. The court concluded that the transaction imposed no duty on the bank with respect to the septic system.
According to Greatbatch, the burden rests with the Gleasons to show that Huntington was in the business of providing information and "mere assertions" fail to meet CT Page 5284-NNN such burden. Mortgage lenders are not generally considered, under Connecticut law, as being suppliers of information about the property being purchased upon which the purchasers may rely. Because Huntington, as a mortgage lender, was not in the information business, it cannot be liable for negligent misrepresentation at least on the facts of this case because it owed no duty of care to the plaintiffs.
Since there is no genuine issue of material fact and an insufficiency at law, the second count must fail, as well as the third count on which it is predicated. Motion for summary judgment on second and third counts is granted.
Jerry Wagner State Trial Referee